UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER NAHUM PARADA-CEDILLO (A-Number: 206-648-088),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 1:26-cv-7314-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Alexander Nahum Parada-Cedilla entered the United States as a minor in 2014 and received special immigrant juvenile status from the Department of Homeland Security in 2019. ICE re-detained him on September 10, 2025, and has held him in custody since that date without an opportunity for a bond hearing. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States without permission on April 27, 2014, at the age of fifteen. ECF No. 1 at 4; ECF No. 6-1 at 3. In January 2019, the Department of Homeland Security ("DHS") granted petitioner special immigrant juvenile ("SIJ") status. ECF No. 1 at 4. It

is not clear from the record whether DHS ever took petitioner into custody. In May 2021, DHS agreed to the termination of petitioner's then-pending removal proceedings so that he could pursue adjustment of status. *Id.* ICE supervised petitioner in the community and required him to attend check-ins and follow conditions of release. *Id.* at 5.

In February and March 2024, local law enforcement arrested petitioner for two misdemeanor driving while intoxicated offenses. *Id.* On August 1, 2024, petitioner pled guilty to both offenses and received a jail term of 45 days for one and 60 days for the other. *Id.*; ECF No. 6-3 at 10-11. ICE was aware of both arrests in 2024 and allowed petitioner to remain at liberty in the community rather than detaining him. ECF No. 1 at 5. It is undisputed that petitioner has been sober since 2024. *Id.* On August 2, 2024, DHS issued petitioner a notice to appear in immigration court and allowed him to remain at liberty in the community pending the February 22, 2026 court date. *Id.* at 5, ECF No. 1-2 at 5.

On September 10, 2025, petitioner appeared at the ICE office for a routine check-in and was taken into custody. ECF No. 1 at 5. ICE did not give petitioner any notice of the reasons for re-detention, and petitioner did not receive a pre-deprivation hearing. *Id.* Petitioner has remained in custody since that time without a bond hearing. *Id.* In a previous habeas matter, now dismissed by stipulation, the government identified the basis for petitioner's detention as 8 U.S.C. § 1225(b)(2)(A). *See* ECF No. 1-2 at 29.

On December 16, 2025, an immigration judge ordered petitioner removed. ECF No. 1 at 6; ECF No. 1-2 at 9-12. Petitioner appealed to the Board of Immigration Appeals on January 15, 2026, and that appeal remains pending. ECF No. 1 at 6; ECF No. 1-2 at 14, 18-19. Accordingly, the removal order is not administratively final.

**Procedural History**

On April 1, 2026, petitioner filed a petition for writ of habeas corpus in the Northern District of Texas, where he was held in immigration custody. ECF No. 1 at 6; ECF No. 1-2 at 23. The district court ordered the government to show cause the next day. ECF No. 1-2 at 23. The respondents argued that petitioner was detained under 8 U.S.C. § 1225(b)(2)(A) as an unadmitted alien. ECF No. 1-2 at 29. Petitioner replied on April 24, 2026, and moved for expedited

consideration on July 21, 2026. ECF No. 1-2 at 23. On or about August 22, 2026, ICE transferred petitioner to the California City Detention Facility. ECF No. 1 at 6. On September 10, 2026, the Texas habeas petition was dismissed through stipulation. ECF No. 1-2 at 24, 34. On September 10, 2026, petitioner filed the instant petition. ECF No. 1. Respondents have filed an answer, ECF No. 6, and petitioner has filed a traverse, ECF No. 7.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his re-detention without a bond hearing violates the Due Process Clause.[1] ECF No. 1 at 9. The government argues that "the fact of detention alone" is insufficient to show a due process violation. ECF No. 6 at 2. The government acknowledges that "the detention authority in this case is 8 U.S.C. § 1226(a) under the precedent in this Circuit." *Id.* (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026)).[2] It argues that the court should order a bond hearing and not address the due process claim. *Id.*

As it acknowledged in its filing in the Northern District of Texas, the government detained petitioner under section 1225(b). *See* ECF 1-2 at 29. Here, it concedes that the proper statutory

[1] As I recommend that the court grant the petition on the due process claim in Count Three, I do not address petitioner's other claims. *See* ECF No. 1 at 8-11.

[2] Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

detention authority should have been section 1226(a). ECF No. 6 at 1. However, this *post hoc* concession does not simply shift the original detention authority to the appropriate statute. *See Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3360-DAD-CKD, 2026 WL 2389805 (E.D. Cal. Aug. 17, 2026) (collecting cases rejecting *post hoc* rationalizations for immigration detention authority); *see also Zuniga Cruz v. Noem*, No. 1:26-cv-01818-DC-EFB, 2026 WL 890471, at *2-3 (E.D. Cal. Apr. 1, 2026) (discussing different procedures for § 1225 and § 1226 detentions); *Martinez-Aguiana v. Mullin*, No. 3:26-cv-0561-RFB-CSD, 2026 WL 2212521, at *2 (D. Nev. July 31, 2026) (noting concession by immigration authorities that they do not follow section 1226 procedures for noncitizens arrested in the interior of the United States under section 1225(b)). Respondents' year-long detention of petitioner under the wrong statutory authority cannot be remedied by a section § 1226(a) bond hearing. *See Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Moreover, respondents attempt to sidestep petitioner's claim that respondents re-detained him in violation of his right to procedural due process. *See* ECF No. 6 at 2. To address that claim, first, a court must consider whether there exists a protected liberty interest under the Due Process Clause, and, second, a court must evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Petitioner came to the United States as a child and was granted special immigrant juvenile ("SIJ") status by DHS in January 2019. ECF No. 1 at 4. It is not clear whether petitioner was ever taken into physical custody by DHS, but petitioner explains that he was supervised by ICE

while on SIJ status, with mandatory check-ins and conditions of his release. *Id.* at 5.

SIJ status allows young immigrants to be deemed "paroled" into the United States for adjustment of status purposes. *See* 8 CFR § 204.11(b)(1); *see also Joshua M. v. Barr*, 439 F. Supp. 3d 632, 655-59 (E.D. Va. 2020) (explaining SIJ process and benefits conferred by SIJ status). SIJ status "reflects the determination of 'Congress to accord those abused, neglected, and abandoned children a legal relationship with the United States and to ensure they are not stripped of the opportunity to retain and deepen that relationship without due process.'" *Joshua M.*, 439 F. Supp. 3d at 678 (quoting *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 170 (3rd Cir. 2018)). In similar circumstances to this case, courts have found that SIJ status confers a protected liberty interest under the due process clause. *See Saini v. Warden*, No. 1:26-cv-6529-KES-EGC, 2026 WL 2481771, at *1 (E.D. Cal. Aug. 24, 2026); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024). I agree with the reasoning of these courts and find that petitioner's SIJ status and years of supervision by ICE conferred a protected liberty interest under the due process clause.

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Petitioner acquired a private interest in continued release during years of ICE supervision while he was on SIJ status in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, the risk of erroneous deprivation without a bond hearing is high. ICE supervised petitioner for years prior to re-detaining him in September 2025. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id.* On the contrary, the fact that the government maintained for a year that petitioner is subject to mandatory detention denied him a bond hearing indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025)

(citation omitted). Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF No. 6. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 12. Respondents raise no opposition to the court ordering a bond hearing and do not directly address petitioner's request for immediate release. ECF No. 6 at 1.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Here, respondents do not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner was convicted of two driving while intoxicated offenses on August 1, 2024. ECF No. 6-3 at 10-11. ICE was aware of both arrests in 2024 and allowed petitioner to remain at liberty in the community rather than detaining him. ECF No. 1 at 5. Respondent does not dispute that petitioner has been sober since 2024. *Id.* On August 2, 2024, the day after petitioner pled guilty to the misdemeanors, DHS issued petitioner a notice to appear in immigration court on February 22, 2026, and allowed him to remain at liberty in the community

pending that date. ECF No. 1-2 at 5.

Petitioner continued to be supervised by ICE until September 10, 2025, when he was re-detained at a scheduled check-in at the ICE office. ECF No. 1 at 5. Respondents provide no indication that there was any necessity for them to re-detain petitioner at that point without a pre-deprivation hearing. ECF No. 6. To the contrary, ICE told petitioner to come to its office for a check-in and re-detained him at the scheduled appointment, suggesting that there was ample time and opportunity to provide pre-deprivation process. ECF No. 1 at 5. Moreover, respondents do not argue that petitioner is a danger or a flight risk. *See* ECF No. 6.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See id.*

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 206-648-088) from their custody on the same conditions as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which

respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE